Jeremy M. Glapion (*Pro Hac Vice* pending)
Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey
Tel: 732-455-9737
Fax: 732-709-5150
jmg@glapionlaw.com

Zack Broslavsky (241736)
Jonathan A. Weinman (256553)
BROSLAVSKY & WEINMAN, LLP
11755 Wilshire Boulevard, Suite 1250
Los Angeles, California 90025
Tel: (310) 575-2550
Fax: (310) 464-3550
zbroslavsky@bwcounsel.com
jweinman@bwcounsel.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MATTHEW AFFOLDER**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MEDIA MIX 365 LLC, NICHOLAS LONG,** and DOES 1-25<br><br>Defendant. | Civil Case No: 8:16-cv-1470<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

**INTRODUCTION**

1. Plaintiff Matthew Affolder ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from Defendant Media Mix 365 LLC's ("MMX"), practice of making autodialed and prerecorded telemarketing calls to cellular telephones without prior express written consent, with Defendant Nicholas Long's ("Long") express authorization, in violation of the Telephone Consumer Protection Act, 47

- 1 -

U.S.C. § 227 *et seq.*, ("TCPA").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendants because they reside in this district.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conduct significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is also proper because Defendant resides in this district.

## PARTIES

4. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Avalon, California. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

5. Defendant Media Mix 365 is and at all times mentioned herein was, a corporation duly organized under the laws of the State of California with its headquarters in Santa Ana, California.

6. Defendant Media Mix 365 is and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

7. Defendant Nicholas Long is, upon information and belief, a resident of California.

8. Defendant Nicholas Long is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

9. Does 1-25 are fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identities will be disclosed in discovery and should be made parties to this action.

## THE TELEPHONE CONSUMER PROTECTION ACT

10. The TCPA was enacted to protect consumers from the invasion of

privacy caused by "unrestricted telemarketing." Congress found that "[b]anning such automated or prerecorded telephone calls … except when the receiving party consents to receiving the call … is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." 47 U.S.C. § 227 (Congressional Statement of Findings).

11. Accordingly, the TCPA makes it unlawful for any person "to make any call (other than a call … made with the prior express consent of the called party) using any automatic telephone dialing system…to any telephone number assigned to a…cellular telephone service." 47 U.S.C. 227(b)(1)(A)(iii).

12. This prohibition encompasses both voice and text calls, including short message service (SMS) messages (commonly known as "text messages"). 18 FCC Rcd. 14014 at 14115, ¶ 165; *see also Jackson v. Caribbean Cruise Line, Inc.*, 14-cv-2485, 2015 U.S. Dist. LEXIS 18783 (E.D.N.Y. Feb. 17, 2015).

13. An "automatic telephone dialing system" is defined as "equipment which has the capacity (A) to store or produce numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. 227(a)(1).

14. The Federal Communication Commission ("FCC") has emphasized that this definition "covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." 27 FCC Rcd. 15391 at 15392, n.5; *see also, e.g.*, 18 FCC Rcd. 14014 at 14092, ¶ 132 (concluding that predictive dialers fall within the statutory definition because of their "capacity to dial numbers without human intervention.").

15. In 2012, the FCC issued a rule requiring consent to be in writing "for all telephone calls using an automatic telephone dialing system…to deliver a telemarketing message to wireless numbers[.]" 27 FCC Rcd. 1830 at 1838, ¶ 20. This rule went into effect on October 16, 2013. *Id.* at 1857, ¶ 66.

16. As codified, "prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorized the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system … and the telephone number to which the signatory authorized such advertisements or telemarketing messages to be delivered." 47 CFR § 64.1200(f)(8).

17. This writing must contain a "clear and conspicuous" disclosure informing the signatory that the execution of the agreement would authorize the seller to deliver to the signatory telemarketing calls using an automatic telephone dialing system. 47 CFR § 64.1200(f)(8)(i)(A).

18. The person cannot be required to sign the agreement "as a condition of purchasing any property, goods, or services." 47 CFR § 64.1200(f)(8)(i)(B).

19. Clear and conspicuous," in turn, means "a notice that would be apparent to a reasonable consumer, separate and distinguishable from the advertising copy or other disclosures." 47 CFR § 64.1200(f)(3).

20. If there is doubt as to consent, "the seller … bear[s] the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained." 27 FCC Rcd. 1830 at 1844, ¶ 33.

21. For non-telemarketing calls, prior express consent is still necessary, but it can be given orally or in writing. *Id.* at ¶ 28.

22. The TCPA provides for a private right of action and statutory damages of $500 per call or text for negligent violations of the TCPA, and $1,500 per call or text for knowing and/or willful violations of the TCPA. 47 U.S.C. § 227(b)(3).

23. As a result, companies who violate this law routinely face judgments or enter into settlements in the seven- or eight-figure range, with the largest known being $75.5 million. The more unrestricted and widespread the spam calling practices, the higher the damages.

**FACTUAL ALLEGATIONS**

24. Defendant MMX has engaged in precisely the type of unrestricted telemarketing which led to the enactment of the TCPA.

25. Plaintiff has received numerous telephone calls to his cellular telephone – number 808-###-9523 – from Defendant MMX using an automatic telephone dialing system and prerecorded voice.

26. These calls include, but are not limited to, calls made on the following dates and times: June 23; June 27 at 11:30 AM and 2:00 PM; and June 28 at 1:31 PM, 1:38 PM, and 2:12 PM.

27. These calls came from telephone numbers including, but not limited to, 1-888-920-2250 and 716-730-5152.

28. All of the calls were "lead generation" calls for solar panel installation, through which Defendant would gather information and then transfer the call recipient to a local solar company. The calls were therefore telephone solicitations/telemarketing.

29. Perhaps in recognition of the illegality of its calls, Defendant refuses to provide its real company name, instead claiming to be a company called "Solar Research Group."

30. Plaintiff did not provide his prior express written consent to receive such calls, nor would such consent make sense. Plaintiff rents an apartment; he does not own his home.

31. Plaintiff has asked Defendant to stop calling, but it continued to do so.

32. At all times, Defendant MMX was acting with the full knowledge, authorization, or participation of its CEO, Defendant Nicholas Long ("Long").

33. These calls were made using an "automatic telephone dialing system" as defined at 47 U.S.C. § 227(a)(1) and as explained in subsequent FCC regulations and orders. The system(s) used by Defendant has/have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

34. This is evidenced by:
- the frequency of the calls;
- the persistence of the calls;
- an unnatural period of silence upon Plaintiff answering many of these calls;
- an audible "click" before an agent appeared on the line;
- "dead air" calls - several of the calls from Defendant's telephone numbers had no agent on the other line when Plaintiff answered; and
- Plaintiff's inability to stop the calls, which suggests that it was a machine doing the dialing and connecting Plaintiff to Defendant's representatives, rather than those representatives continuing to manually dial Plaintiff's telephone number.
- several of the calls using a prerecorded voice.

35. Specifically, it appears that Defendant uses the "ytel" dialing system. Ytel provides voice broadcasting services which allow its customers to use a system capable of dialing thousands of telephone numbers simultaneously, and capable of playing a pre-recorded message when an individual answers the telephone.

36. The Ytel website describes its software as "[a] Predictive Dialer that just works." http://get.ytel.com/capterra-predictive-dialer/

37. Furthermore, as mentioned, many of the calls were made using an artificial or prerecorded voice, which, aside from being suggestive of autodialer usage, is a separate category of illegal calls under the TCPA.

38. Plaintiff knew that these calls used a prerecorded voice because he is familiar with normal human interaction, and could tell that the voice on the other line was a recording rather than a live person with whom he could interact. He was unable to interrupt the voice or get the voice to deviate from the prerecorded message, as tends to be the case with prerecorded messages.

39. The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

40. Accordingly, Defendant MMX's calls to Plaintiff violated § 227(b) of the TCPA.

41. In addition, Plaintiff's telephone number has been on the "Do Not Call" list since 2005.

42. Because Defendant placed two or more telemarketing calls to Plaintiff's telephone number on the Do Not Call list without his consent, Defendants' calls *also* violate § 227(c) of the TCPA, which carries with it damages in addition to damages for § 227(b) violations.

43. Because such calls appear core to Defendant MMX's business model, upon information and belief, Defendant Long, as Defendant MMX's President, had actual knowledge of Defendant MMX's business practices, and had actual knowledge that Defendant MMX was placing calls to the telephone numbers of individuals who had not provided consent.

44. Indeed, upon information and belief, it was Defendant Long who purchased, or instructed his employees to purchase, telephone numbers to call rather than properly obtaining prior express written consent to call those telephone numbers.

45. Plaintiff and all putative class members have suffered actual injury as a result of Defendant's telephone calls, including, but not limited to:

- Device storage;
- Data usage;
- Lost time tending to and responding to the unsolicited calls;
- Depleted battery and cost in charging his phone;
- Tying up of his telephone line;
- Invasion of Privacy;
- Nuisance.

46. Accordingly, Plaintiff is entitled to statutory damages jointly and severally against both Defendants in the amount of:

- $500-$1500 per call for Defendants' violations of § 227(b); and
- $500-$1500 per call for Defendants' violations of § 227(c).

## CLASS ACTION ALLEGATIONS

47. Upon information and belief, Defendant MMX has made such unsolicited autodialed and prerecorded calls to thousands of individuals' cellular telephones nationwide using several different numbers.

48. A simple internet search reveals dozens of complaints about Defendant MMX's conduct in making unsolicited telephone calls to cellular telephones.[1]

49. Accordingly, Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a proposed class defined as:

> Plaintiff and all persons within the United States to whose cellular telephone Defendant Media Mix 365 LLC placed a telephone call using any automatic telephone dialing system or an artificial or prerecorded voice, and for whom Defendant Media Mix 365 has no record of their consent to such calls; or to whom Defendant placed two or more telephone calls in a 12-month period and whose numbers appeared on the National Do Not Call Registry at that time.
>
> ("Class")

50. Excluded from this class are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of

---

[1] *See, e.g.*, http://800notes.com/Phone.aspx/1-716-730-5152; http://800notes.com/Phone.aspx/1-888-920-2250

- 8 -

1 their staffs and immediate families, and any claims for personal injury, wrongful
2 death, and/or emotional distress.

3     51.    The Class members for whose benefit this action are brought are so
4 numerous that joinder of all members is impracticable.

5     52.    The exact number and identities of the persons who fit within the class
6 are ascertainable in that Defendant MMX maintains written and electronically
7 stored data showing:

8     a.    The time period(s) during which Defendant MMX placed its
9 calls;

10     b.    The telephone numbers to which Defendant MMX placed its
11 called;

12     c.    The sources for the telephone numbers to which Defendant
13 MMX placed its calls.

14     53.    The Class is comprised of thousands of individuals nationwide.

15     54.    There are common questions of law and fact affecting the rights of the
16 Class members, including, *inter alia*, the following:

17     a.    Whether Defendant MMX used an automatic dialing system in
18 placing its calls;

19     b.    Whether Defendant MMX used an artificial or prerecorded
20 voice in its calls;

21     c.    Whether Defendant MMX took adequate steps to acquire and/or
22 track express written consent;

23     d.    Whether and to what extent Defendant Long authorized, knew
24 of, or participated in the call scheme;

25     e.    Whether and to what extent Defendants accessed the national
26 Do Not Call list, trained its employees on compliance therewith, and/or
27 declined to call such numbers;

28     f.    Whether Plaintiff and the Class were damaged thereby, and the

extent of damages for such violations; and

  g. Whether Defendants should be enjoined from engaging in such conduct in the future.

55. Plaintiff is a member of the Class in that he received two or more unsolicited autodialed and prerecorded telemarketing telephone calls on his cellular telephone from Defendant MAX.

56. The claims of Plaintiff are typical of the Class members in that they arise from Defendants' uniform conduct and are based on the same legal theories of all Class members.

57. Plaintiff and all putative Class members have also necessarily suffered actual damages in addition to statutory damages, as the telephone calls at issue took up space on putative Class members' devices, tied up Class members' telephone lines, depleting Class members' devices, used Class members' cellular telephone plans, caused a nuisance to Class members, and invaded Class members' privacy.

58. Plaintiff has no interests antagonistic to, or in conflict with, the Class.

59. Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent himself and the Class.

60. Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive and declaratory relief for the Class as a whole.

61. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

62. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

63. Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227(b)**
(On Behalf of Plaintiff and the Class)

64. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

65. Defendant MMX made telephone calls to the cellular telephone numbers belonging to Plaintiff and the other members of the Class.

66. These calls used equipment that had the capacity to store or product telephone numbers to be called, using a random or sequential number generator, and/or without human intervention.

67. Many of the calls used a prerecorded voice.

68. These calls were all telemarketing, telephone solicitations, and/or advertisements.

69. The telephone calls were made without the prior express written consent of Plaintiff and the other members of the putative Class.

70. Defendant Long authorized, was aware of, and/or participated in the calls.

71. Defendants have therefore violated 47 U.S.C. § 227(b)(1)(A)(iii).

72. As a result of Defendants' unlawful conduct, Plaintiff and the members of the putative Class suffered actual damages and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation.

73. Should the Court determine that Defendants' conduct was willful and/or knowing, Plaintiff and each member of the class are entitled to treble damages in the amount of $1,500 per call, pursuant to 47 U.S.C. § 227(b)(3).

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227(c)**
(On Behalf of Plaintiff and the Class)

1  74. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

2

3  75. Defendant MMX made two or more telemarketing telephone calls in a 12-month period to class members.

4

5  76. The telephone numbers to which Defendant MMX made its calls were on the national "Do Not Call" list.

6

7  77. Defendant Long authorized, was aware of, and/or participated in the calls.

8

9  78. Defendants have therefore violated 47 U.S.C. § 227(c)

10  79. As a result of Defendants' unlawful conduct, Plaintiff and the members of the putative Class suffered actual damages and, under 47 U.S.C. § 227(c)(5), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation.

11

12

13

14  80. Should the Court determine that Defendants' conduct was willful and/or knowing, Plaintiff and each member of the class are entitled to treble damages in the amount of $1,500 per call, pursuant to 47 U.S.C. § 227(c)(5).

15

16

17 **PRAYER FOR RELIEF**

18  **WHEREFORE**, Plaintiff Matthew Affolder, individually and on behalf of the Class, prays for the following relief:

19

20  A. An order certifying the Class as defined above, appointing Plaintiff Matthew Affolder as the representative of the Class, and appointing his counsel as Class Counsel;

21

22

23  B. An order declaring that Defendants' actions, as set out above, violate 47 U.S.C. §§ 227(b) and 227(c);

24

25  C. An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

26

27

28  D. An award of actual and statutory damages;

E.   An award of reasonable attorneys' fees and costs; and

F.   Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** August 9, 2016                    */s/ Zack Broslavsky*_____
Zack Broslavsky (241736)
BROSLAVSKY & WEINMAN, LLP
11620 Wilshire Boulevard, Suite 1250
Los Angeles, California 90025
Tel: (310) 575-2550
Fax: (310) 464-3550
zbroslavsky@bwcounsel.com
jweinman@bwcounsel.com

Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com

Pro Hac Vice to be filed